IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 21, 2024

## GARY LEE EMORY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 121471    Steven W. Sword, Judge**

___

## No. E2023-01167-CCA-R3-PC

___

The petitioner, Gary Lee Emory, appeals the denial of his petition for post-conviction relief, which petition challenged his multiple convictions of aggravated robbery, robbery, aggravated burglary, and facilitation of aggravated burglary, alleging that he was deprived of the effective assistance of counsel. Discerning no error, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and TIMOTHY L. EASTER, JJ., joined.

Gerald L. Gulley, Jr., Knoxville, Tennessee, for the appellant, Gary Lee Emory.

Jonathan Skrmetti, Attorney General and Reporter; G. Kirby May, Assistant Attorney General; Charme P. Allen, District Attorney General; and TaKisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

A Knox County Criminal Court jury convicted the petitioner of two counts of robbery, two counts of aggravated robbery, one count of aggravated burglary, and one count of facilitation of aggravated burglary for offenses committed against Robert Beasley.[1] *State v. Byron Hartshaw and Gary Lee Emory*, No. E2019-02200-CCA-R3-CD, 2021 WL 5861278, at *9 (Tenn. Crim. App., Knoxville, Dec. 20, 2021), *perm. app. denied* (Tenn. Apr. 14, 2022). This court summarized the evidence on direct appeal:

___

[1]    The petitioner was tried with a co-defendant, Byron Hartshaw, who was also convicted of numerous charges.

[T]he victim allowed [the petitioner] inside his apartment and . . . [the petitioner] then let Defendant Hartshaw inside. Defendant Hartshaw then jumped on Mr. Beasley, knocking him to the floor in his wheelchair, and took money out of the waistband of his pants. The defendants also took money off his coffee table and other personal items. Mr. Beasley testified that he was hit by an elbow and that, while he originally thought the defendants were joking with him, became fearful when he realized they were trying to take things from him.

. . . .

[The petitioner] wielded a gun (or what appeared to Mr. Beasley and [witness Erin] Hodge to be a gun) and had a hammer when the defendants were inside Mr. Beasley's apartment and forcibly taking his money and property. Mr. Beasley, Ms. Hodge, and [the petitioner] all testified that [the petitioner] picked up the red hammer from Mr. Beasley's coffee table and was holding the hammer at the time that the defendants were forcibly taking money from Mr. Beasley.

. . . .

[The petitioner] gained entry to the victim's apartment complex, along with Defendant Hartshaw, after being granted entry by another apartment resident who recognized the two men. Once inside the complex, [the petitioner] started knocking on the victim's door and identified himself. The victim allowed [the petitioner] into his apartment, believing him to be coming to repay money owed to Mr. Beasley, and then the door was shut behind him and locked. [The petitioner] then unlocked the door and allowed Defendant Hartshaw to enter the residence; Defendant Hartshaw immediately jumped on the victim and knocked him to the floor. He later stole money and property from the victim.

*Id.* at \*12-14. The trial court imposed an effective 12-year sentence. *Id.* at \*1.

The petitioner filed a timely pro se petition for post-conviction relief, and after the appointment of counsel, filed an amended petition.

At the July 2023 evidentiary hearing, the petitioner testified that he met with trial counsel approximately 10 times and discussed a defense theory. The petitioner asserted that the jury's convicting him of the lesser-included charges in Counts 1 and 2, aggravated robbery with a deadly weapon, should have limited the jury to considering only the lesser-included charges in Counts 3 and 4, aggravated robbery accomplished by display of an article fashioned to lead a victim to reasonably believe it to be a deadly weapon. The petitioner said that at trial, the court ruled that in Counts 1 through 4, the State was limited to arguing that the deadly weapon was the firearm and that the petitioner elected to testify with that understanding. At the close of the evidence, the trial court then ruled that only Counts 1 and 2 were limited to the firearm and that the State could argue "whatever they want" in Counts 3 and 4. The petitioner asserted that trial counsel failed to object to the court's changed ruling and failed to move the trial court to instruct the jury that they may consider only the firearm as the deadly weapon. He reiterated that he chose to testify because he believed the State would be limited to arguing that only the firearm could be considered a deadly weapon for the purposes of Counts 1 through 4. He said that if he had known that the State would be allowed to argue that the hammer could be considered a deadly weapon, he would not have testified. He complained that trial counsel failed to warn him before testifying that the hammer could be considered a deadly weapon.

During cross-examination, the petitioner said that the theory of defense was that he never possessed a weapon. He acknowledged that he took the victim's money. On redirect examination, the petitioner asserted that trial counsel failed to file a petition for rehearing after this court denied his direct appeal.

Trial counsel testified that he met with the petitioner regularly in preparation for trial. He said that he moved for a bill of particulars on the petitioner's recommendation "to get the understanding as to what the deadly weapon was." He was "happy" to learn that the State identified the deadly weapon charged in the indictment as "the gun" because he could argue to the jury that the petitioner did not have a gun based on inconsistencies in the evidence. Based on the bill of particulars, he also planned to argue that even if the petitioner picked up the hammer, the hammer was not a deadly weapon. He said that the primary defense theory "was innocence" or "at the very least" that "there wasn't a deadly weapon used." Trial counsel said that in February 2018, the State emailed him, informing him that they intended to argue that the hammer could also be considered a deadly weapon. He said that on a hearing on the bill of particulars, the court ruled, based on the State's argument, that only the gun would be considered a deadly weapon in this case. Trial counsel explained that although he thought that ruling may be incorrect, he believed it would be a disservice to the petitioner to raise the issue with the court because he believed the ruling benefited his client. He said that he believed that if the ruling was incorrect "and

the State recognizes it . . . then it was the State's responsibility . . . to bring it up to the [c]ourt." Trial counsel said that the State did not raise the issue with the court until the conference on jury instructions during trial. He said that during the jury instruction conference, he argued that the instructions for Counts 3 and 4 should be limited to an "article that was fashioned to make [the victim] believe it to be . . . a gun" based on the trial court's prior ruling. Trial counsel acknowledged that the State had sent him an email in which the State asserted that its theory was not limited to the gun as the deadly weapon. Counsel recalled that the first discussion about the jury instructions was prior to the petitioner's trial testimony but that the State's bringing to the court's attention the email about its theory of prosecution occurred after the petitioner's testimony. Trial counsel said that he raised the jury instruction issue on direct appeal.

During cross-examination, trial counsel testified that when the petitioner testified at trial, he and the petitioner believed that the State would be limited to arguing that only the gun was the deadly weapon. He said that he argued to the court that the court's prior ruling on the deadly weapon limitation would be ineffectual if it allowed the State to argue that the hammer could also be considered a deadly weapon. He said that he did not explicitly move for the trial court to require the State to make an election of offenses at trial because that was "what we did at the bill of particulars" hearing.

At the close of the evidence, the post-conviction court took the matter under advisement. In its written order denying post-conviction relief, the post-conviction court concluded that the petitioner failed to establish that counsel performed deficiently or that he was prejudiced by counsel's actions. The court found that "a reasonable explanation for the jury's verdicts in Counts 1-4 was that they believed the State had not proven that the [petitioner] had a gun, but did have an article fashioned to lead the victim to believe it was a deadly weapon. This could have been any object." The court also found that trial counsel "did make objections at trial to any reference to the hammer and raised the issue on appeal."

In this timely appeal, the petitioner argues that his trial counsel performed deficiently by advising him that only a firearm could be considered a deadly weapon for an aggravated robbery conviction. The State argues that the trial court properly denied relief.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.*

§ 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citation omitted), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

At the hearing on the petitioner's motion for a bill of particulars, the State told the trial court that it intended to argue that the gun, not the hammer, constituted the deadly weapon to establish the offenses in Counts 1 through 4. The trial court ruled that based on the State's declaration, there was no "further need for a bill of particulars" and said, "The hammer is not the deadly weapon that's being referred to in the indictment." At trial, when Ms. Hodge testified that the petitioner had a hammer and was "not scared to use

it," trial counsel moved for a mistrial on the ground that the court had ruled that the hammer was not a deadly weapon. The court ruled that, although it "was error for that to come in," the error did not rise "to the level where there's a manifest necessity to declare a mistrial." The court offered to give a curative instruction, but the petitioner declined to avoid drawing more attention to the matter. During the jury instruction conference, trial counsel asked the court to include an instruction that the hammer could not be considered a deadly weapon based on the court's prior ruling.

In our view, trial counsel did not perform deficiently. He moved for a bill of particulars and was able to have the trial court rule that the hammer would not be considered a deadly weapon. Trial counsel moved for a mistrial when a State witness testified that she feared the petitioner would use the hammer as a weapon. Finally, trial counsel asked for a jury instruction eliminating the hammer from consideration as a deadly weapon. That the trial court changed or clarified its ruling after the petitioner testified does not render counsel's performance deficient.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE